# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| TERI DEAN o/b/o B.D., | No. CV 07-6668-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Teri Dean ("plaintiff"), on behalf of her minor son B.D.[1], filed this action on October 26, 2007, seeking review of the Commissioner's denial of B.D.'s application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 15, 2007, and March 6, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 8, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

---

[1] At the time this action was filed, Teri Dean was appointed the Guardian Ad Litem for her then-minor son, who will be referred to herein as "B.D."

## II.

## **BACKGROUND**

On September 8, 2005, Teri Dean filed an application for her then-minor son, B.D., seeking Supplemental Security Income payments, alleging that B.D. had been disabled since March 12, 2004, due to attention-deficit hyperactivity disorder ("ADHD"), and reading problems. [Administrative Record ("AR") at 40, 52, 61.] After the application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 23, 26-30, 31, 32-36.] A hearing was held on May 15, 2007, at which time both plaintiff and B.D. appeared and testified. Counsel for plaintiff was also present. [AR at 168-84.]

In a decision dated May 24, 2007, the ALJ found that B.D. "has not been disabled within the meaning of the Social Security Act since September 8, 2005, the date the application was filed." [AR at 10-13.] Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. [AR at 7.] When the Appeals Council, on September 15, 2007, denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner in B.D.'s case. [AR at 3-5.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATING DISABILITY IN A CHILD

Disability for children is determined in a somewhat different manner than disability for adults. For a child to be disabled for the purpose of receiving benefits, he must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which could be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000). An impairment causes "marked and severe functional limitations" if it meets or equals an impairment described in the Listing of Impairments. See 20 C.F.R. § 416.924(d); see also Merrill, 224 F.3d at 1085. "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).

**A.    THE THREE-STEP SEQUENTIAL EVALUATION PROCESS**

The regulations promulgated by the Social Security Administration establish a three-step sequential evaluation process to be followed in a child disability case. See 20 C.F.R. § 416.924. First, it must be determined whether the child claimant is involved in substantial gainful activity. If so, there is no disability, and the claim is denied. See 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity (and most children are not), then it is determined whether the child claimant has a severe medically determinable impairment or combination of impairments. If not, there is no disability and the claim is denied. See 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, then in the third and final step, it must be determined whether the impairment meets or medically or functionally equals in severity an impairment in the Listing of Impairments found at 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listing"). If the impairment

meets or equals an impairment in the Listing, then it is presumed to cause "marked and severe functional limitations." Assuming that the 12-month duration period is also established, benefits are awarded. See 20 C.F.R. § 416.924(d). See Smith v. Massanari, 139 F.Supp.2d 1128, 1132 (C.D. Cal. 2001).

Medical equivalence exists if the impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). In other words, "[t]o equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment . . . ." Smith, 139 F.Supp.2d at 1135 (internal quotations and citations omitted).

In order for a severe impairment or combination of impairments to functionally equal the Listing, it must result in "marked" limitations in two "domains" of functioning, or an "extreme" limitation in one such domain. See 20 C.F.R. § 416.926a(a).[2] A "marked" limitation is one where the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). It is a limitation that is "'more than moderate'" but "'less than extreme.'" Id. An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). It is the rating given to "the worst limitations." Id.

**B.    THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

In this case, at step one, the ALJ found that B.D. had never engaged in substantial gainful activity. [AR at 11.] At step two, the ALJ concluded that B.D. has the medically determinable impairments of ADHD and dysthymia, but that his impairments are not severe. [AR at 11.] As such, the ALJ concluded that B.D. is not disabled, and did not proceed to step three of the evaluation process. [AR at 11-13.]

---

[2]    The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(g)-(l). For each domain, various criteria are listed to determine the extent of a child's limitations caused by the impairment.

4

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of B.D.'s treating physician; (2) failed to properly consider the type, dosage and side effects of B.D.'s prescribed medications; and (3) erred in concluding that B.D.'s mental impairment is not severe. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**THE TREATING PHYSICIAN'S OPINION**

In the decision, the ALJ found that B.D.'s impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the effects of the symptoms were not credible. [AR at 12.] In support, the ALJ relied on the psychological consultative examination of B.D. performed by Dr. John Ayvazian on January 3, 2006, at which B.D. tested with a full scale IQ of 64, which would indicate that he was functioning "in the extremely low range of intellectual ability." Other tests, however, revealed evidence that B.D. was malingering, and Dr. Ayvazian concluded that B.D.'s scores did not likely reflect his actual intellectual functioning. [AR at 12, 116-21.] The ALJ also commented on B.D.'s own admission that he tried to make some mistakes during the psychological testing, at least "a little bit." [AR at 12, 175.] Next, the ALJ gave limited weight to the assessment of the State Agency consultant who found that B.D. had "less than marked" limitations in the domains of acquiring and using information and attending and completing tasks, and no limitations in the other domains. [AR at 131-35.] The limited weight was a result of the State Agency consultant being "influenced" by the "unreliable psychological test results" as noted by Dr. Ayvazian. The ALJ thus concluded that B.D. "has no more than minimal credible limitations in any of the domains; thus, he has no 'severe' impairment." [AR at 12].

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of B.D.'s treating physician. From at least February, 2006, through April, 2007, Dr.

Richard Ferman[3] consistently diagnosed B.D. with ADHD and dysthymia, assessed him with a Global Assessment of Functioning ("GAF") score of 40[4], and prescribed Wellbutrin for his condition. [AR at 142, 144, 146, 148, 150, 152, 154, 156, 158, 160.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security

---

[3] It appears that Dr. Ferman treated B.D. since as early as September, 2004. [AR at 130.]

[4] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

Ruling[5] ("SSR") 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself considered." (citation omitted)). However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.[6] See id.; see also Social Security Ruling 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

404.1527(d)(2), 416.927(d)(2). Here, Dr. Ferman saw B.D. on a regular basis for well over two years, conducted updates of B.D., and prescribed medications. See 20 C.F.R. §§ 404.1527(d)(2)(I), (ii), 416.927(d)(2)(I), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of Dr. Ferman's treatment relationship with B.D., he had the broadest range of knowledge regarding B.D.'s condition. See Smolen, 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment."). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. The ALJ here did not give any reasons, let alone specific and legitimate reasons, to reject the findings of Dr. Ferman. Indeed, the ALJ made no reference whatsoever to Dr. Ferman or his reports in the opinion. This is error.

      Defendant contends that the ALJ in fact accepted Dr. Ferman's diagnoses that B.D. suffers from ADHD and dysthymia, but that these diagnoses do not establish a severe impairment without evidence of corresponding limitations.[7] Defendant further contends that Dr. Ferman's consistent assessment of a GAF score of 40 also does not create a disability. However, while a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Ferman's assessment of a GAF score of 40 and its implications may be ignored or its implications rejected without sufficient reason. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Escardille v. Barnhart, 2003 WL 21499999,

---

[7] The Court agrees with defendant that the record contains no evidence that the fact that B.D. was born with a positive toxicology screen for PCP in and of itself creates a current disability. Joint Stip. at 7.

8

at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error). Further, evidence of B.D. malingering while being examined by Dr. Ayvazian, or of the temporal nature of GAF scores, is insufficient, without more, to reject a treating physician's consistent, year-long conclusion that B.D. is experiencing "some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." While evidence of deception may certainly warrant rejecting a plaintiff's credibility, there is no evidence that B.D. was deceptive with Dr. Ferman, who treated B.D. and prescribed medications to him -- based on his examinations and role and duty as a treating physician -- on a regular basis over an extended period of time.[8] Remand is warranted.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to fully consider the opinion of B.D.'s treating physician.[9] The

/
/
/
/

---

[8] The ALJ's rejection of the State Agency consultant's conclusion that B.D. has less than marked limitations in acquiring and using information and attending and completing tasks, is undercut by the fact that the consultant was fully aware of Dr. Ayvazian's conclusion of deception but nevertheless made those "less than marked" findings. [AR at 135.]

[9] As the ALJ's examination of the treating physician's opinion on remand may impact on the other issues raised in the Joint Stipulation, the Court will not address those issues in this Order. Rather, upon remand, the ALJ should examine B.D.'s prescribed medications, and re-examine the finding that B.D.'s impairments are not severe.

1  ALJ is instructed to take whatever further action is deemed appropriate and consistent with this
2  decision.
3        Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;
4  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant
5  for further proceedings consistent with this Memorandum Opinion.

8  DATED: August 27, 2008
                                                                PAUL L. ABRAMS
9                                          UNITED STATES MAGISTRATE JUDGE